UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>FRED L. WHEELER, II & LANDSCAPE CENTER OF MAINE, INC.,<br><br>Defendants. | No.<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT

The United States of America alleges as follows:

1. The United States brings this action to enforce the provisions of Title VIII of the Civil Rights Act of 1968, as amended, 42 U.S.C. §§ 3601, *et seq*. (the "Fair Housing Act").

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 3614(a).

3. Venue is proper in this district under 28 U.S.C. § 1391(b) because the actions and omissions giving rise to the United States' allegations occurred in the District of Maine and Defendants reside or do business in the District of Maine.

## FACTUAL ALLEGATIONS

4. Defendant Fred L. Wheeler, II is a resident of Manchester, Maine.

5. Defendant Landscape Center of Maine, Inc. f/k/a Fred Wheeler Landscaping & Nursery, Inc. ("Landscape Center of Maine") is a Maine corporation.

6. Defendant Wheeler is the sole officer and shareholder of Landscape Center of Maine. Defendant Wheeler:

a. exercises complete ownership of and control over Landscape Center of Maine;

b. oversees Landscape Center of Maine's operations;

c. holds hiring and payment authority over any employees of Landscape Center of Maine;

d. is responsible for the contracts of Landscape Center of Maine; and

e. dictates where, when, and how the work of Landscape Center of Maine proceeds and is performed.

7. Defendant Wheeler is further responsible for the control and/or management of Landscape Center of Maine's funds and finances.

8. From approximately February 18, 2015 through approximately October 21, 2022, Defendant Landscape Center of Maine owned a residential real estate property located at 131-135 Ash Street in Lewiston, Maine (the "Subject Property") that contained approximately six rental units.

9. The Subject Property was occupied as a residence by several families from approximately February 18, 2015 through approximately October 21, 2022. The Subject Property is a "dwelling" within the meaning of 42 U.S.C. § 3602(b).

10. At all times relevant to this action, Defendant Wheeler acted on behalf of Landscape Center of Maine, and controlled and managed the Subject Property, including but not limited to, by accepting or rejecting prospective tenants, setting rates for rent and security deposits, signing rental agreements, collecting rent, accepting requests for repairs, making repairs, sending eviction notices, and appearing in housing court in cases related to the Subject Property.

11. Defendant Landscape Center of Maine also owns or formerly owned residential real estate properties located at 639 Sabattus Road in Sabattus, Maine and 44-46 Gage Street in Augusta, Maine (together with the Subject Property, the "Properties"). On information and belief, the Sabattus and Augusta properties together contain multiple rental units.

## Defendant Wheeler's Harassment

12. On repeated occasions from at least 2016 and continuing through 2022, Defendant Wheeler subjected multiple female tenants of the Subject Property to discrimination on the basis of sex, including severe or pervasive and unwelcome sexual harassment. Such conduct has included, but is not limited to:

   a. Subjecting female tenants to unwelcome sexual contact, including coercing them to perform oral sex on him;

   b. Offering to grant tangible benefits—such as forgiving back rent owed by a tenant—in exchange for engaging in sexual acts with him;

   c. Conditioning a rental agreement on a romantic relationship with him;

   d. Making unwelcome comments about female tenants' physical appearances, giving them unwanted gifts, making unwelcome sexual advances, and sending unwanted sexually suggestive text messages to female tenants;

   e. Taking adverse housing actions, such as eviction, or threatening to take such actions, against female tenants who objected to or resisted his unwelcome sexual harassment; and

   f. Entering the homes of female tenants without their consent.

13. For example, in or around late summer or fall of 2021, Defendant Wheeler made an explicit offer to a female tenant who lived in the Subject Property that he would forgive her back rent of $400 if she went down into the basement of the Subject Property and let Defendant Wheeler give her "a couple of back shots." The female tenant understood Defendant Wheeler's statement to mean that Defendant Wheeler wanted to have anal sex with her. On another occasion, Defendant Wheeler asked the female tenant if he could "shotgun" her, which the female tenant understood to mean that Defendant Wheeler was asking to kiss her. Defendant Wheeler also made unwanted comments to this female tenant about her physical appearance, gave her unwanted gifts, and entered her apartment uninvited on numerous occasions. The female tenant did not acquiesce to Defendant Wheeler's sexual advances, and took steps to avoid Defendant Wheeler such as keeping her blinds shut and walking to work (rather than driving) so she would not have to see Defendant Wheeler. Eventually, Defendant Wheeler initiated eviction proceedings.

14. In another example, on two occasions in approximately 2017 or 2018, Defendant Wheeler told a female tenant who lived at the Subject Property that he had housing paperwork for her in the basement of the Subject Property. The female tenant went into the basement, and once she was in Defendant Wheeler's office in the basement, Defendant Wheeler locked the office door and took his clothes off. Defendant Wheeler then put a pillow on the floor, made the female tenant kneel down, and cornered the female tenant such that she felt she had to give Defendant Wheeler oral sex because she could not get out of the office. The female tenant acquiesced to Defendant Wheeler's sexual advances. These two instances occurred approximately three to six

months apart. During her tenancy, through 2020, Defendant Wheeler also visited the female tenant's apartment uninvited on numerous occasions, and tried to hug her and kiss her on her face several times. The female tenant took steps to avoid Defendant Wheeler such as having someone else go into the basement to do her laundry because she no longer felt safe in the basement alone.

15. In another example, in or around 2019, Defendant Wheeler told a prospective female tenant that she could only rent an apartment at the Subject Property if she pretended to be his girlfriend. After she moved in, Defendant Wheeler made unwanted comments to her about her physical appearance, called her his girlfriend, sent her "xo" texts, and tried to kiss her on her face. This female tenant took steps to avoid Defendant Wheeler such as not leaving her apartment if Defendant Wheeler was outside, and asking both her adult son and adult daughter to move in with her.

16. In another example, between 2018 and 2021, Defendant Wheeler made unwanted comments to a female tenant who lived at the Subject Property about her physical appearance, gave her unwanted gifts, gave her unwanted hugs, gave her unwanted kisses on her cheek, and sent her "xo" texts. Defendant Wheeler also visited the female tenant's apartment uninvited several times, including on one occasion in which the female tenant was laying on her bed in her bedroom. The female tenant chose to hide in her bedroom to avoid contact with Defendant Wheeler, and thought about jumping out of her bedroom window to avoid seeing and interacting with Defendant Wheeler. The female tenant took steps to avoid Wheeler such as rigging her unit door so that she could tell if someone had come into her unit. Eventually, the female tenant decided to move out because living at the Subject Property had become too stressful.

17. In another example, in June 2022, Defendant Wheeler entered into a lease agreement with a prospective female tenant for an apartment at the Subject Property. The day after the lease was signed, Defendant Wheeler called the prospective female tenant at night and offered that she could get the keys to the apartment at Defendant Wheeler's house, and also invited her to spend the night at his house or help her find a place to stay that night. The prospective female tenant declined to go to Defendant Wheeler's house, and was then later informed by a purported agent of Defendant Wheeler that she could no longer have the apartment at the Subject Property. As a result, the prospective female tenant was unhoused for approximately one month.

18. The experiences of these five women described above in Paragraphs 13 through 17 were not isolated instances; nor were they the only instances of Defendant Wheeler's sexual harassment. Rather, these instances were part of Defendant Wheeler's longstanding pattern or practice of illegal sexual harassment of multiple female tenants between at least 2016 and 2022.

19. The above-described actions and conduct of Defendant Wheeler caused female tenants and prospective tenants to suffer fear, anxiety, and emotional distress, and inhibited their ability to secure and maintain housing for themselves and their families.

20. Defendants owned and/or managed the Subject Property at all times when the harassment occurred.

21. Defendant Wheeler's discriminatory conduct described above occurred while he was exercising his authority as an agent for Landscape Center of Maine. Landscape Center of Maine is vicariously liable for Defendant Wheeler's conduct.

## CAUSE OF ACTION

22. By the actions and statements described above, Defendants have:

    a. Made dwellings unavailable because of sex, in violation of 42 U.S.C. § 3604(a);

    b. Discriminated in the terms, conditions, or privileges of the rental or sale of dwellings, or in the provision of services or facilities in connection therewith, because of sex, in violation of 42 U.S.C. § 3604(b);

    c. Made statements with respect to the sale or rental of dwellings that indicate a preference, a limitation, or discrimination based on sex, in violation 42 U.S.C. § 3604(c); and

    d. Coerced, intimidated, threatened, or interfered with persons in the exercise or enjoyment of, or on account of their having exercised or enjoyed, their rights granted or protected by Sections 804 and 805 of the Fair Housing Act, in violation of 42 U.S.C. § 3617.

23. Defendants' conduct constitutes:

    a. A pattern or practice of resistance to the full enjoyment of the rights granted by the Fair Housing Act, 42 U.S.C. §§ 3601, *et seq.*; and

    b. A denial to a group of persons of rights granted by the Fair Housing Act, 42 U.S.C. §§ 3601, *et seq.*, where such denial raises an issue of general public importance.

24. Tenants and persons associated with them have been injured by Defendants' discriminatory conduct. These persons are "aggrieved persons" as defined in 42 U.S.C. § 3602(i), and have suffered damages as a result of Defendants' conduct.

25. Defendants' conduct was intentional, willful, and taken in reckless disregard of the rights of others.

## DEMAND FOR JURY TRIAL

26. The United States demands a jury trial pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

WHEREFORE, the United States requests that the Court enter an Order that:

a. Declares that Defendants' discriminatory practices violate the Fair Housing Act, 42 U.S.C. §§ 3601, *et seq.*;

b. Enjoins Defendants, their heirs, agents, employees, and successors, and all other persons in active concert or participation with them from:

   i. Discriminating on the basis of sex, including engaging in sexual harassment, in any aspect of the rental or sale of a dwelling;

   ii. Interfering with or threatening to take any action against any person engaged in the exercise or enjoyment of rights granted or protected by the Fair Housing Act;

   iii. Failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of Defendants' past unlawful practices to the position they would have been in but for the discriminatory conduct; and

   iv. Failing or refusing to take such affirmative steps as may be necessary to prevent the recurrence of any discriminatory conduct in the future and to eliminate, as nearly as practicable, the effects of Defendants'

      unlawful practices;

c. Awards monetary damages to each person aggrieved by Defendants' discriminatory conduct, pursuant to 42 U.S.C. § 3614(d)(1)(B);

d. Assesses civil penalties against Defendants to vindicate the public interest, pursuant to 42 U.S.C. § 3614(d)(1)(C); and

e. Awards such additional relief as the interests of justice may require.

Dated: November 16, 2023

Respectfully submitted,

MERRICK GARLAND
Attorney General

DARCIE N. MCELWEE
United States Attorney
District of Maine

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

CARRIE PAGNUCCO
Chief, Housing and Civil Enforcement Section

*/s/ Katelyn Saner*
KATELYN SANER
Assistant United States Attorney
United States Attorney's Office
100 Middle Street, 6th Floor
Portland, Maine 04101
Phone: (207) 780-3257
Email: Katelyn.Saner@usdoj.gov

*/s/ Ameya Ananth*
R. TAMAR HAGLER
Deputy Chief
AMEYA ANANTH
Trial Attorney
Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue NW – 4CON
Washington, DC 20530
Phone: (202) 514-4713
Email: Tamar.Hagler@usdoj.gov;
Ameya.Ananth@usdoj.gov

Attorneys for Plaintiff
United States of America