UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) No. 1:23-cv-00424-NT |
| | ) |
| FRED L. WHEELER, II, | ) |
| and LANDSCAPE CENTER | ) |
| OF MAINE, INC., | ) |
| | ) |
| Defendants | ) |

ORDER ON MOTION TO INTERVENE

In this housing discrimination case brought by the United States of America, Taylor Pratt seeks leave to intervene as a plaintiff. *See* Motion to Intervene (ECF No. 28) at 1. The United States supports Pratt's intervention, *see id.*, but the Defendants Fred L. Wheeler, II, and Landscape Center of Maine, Inc., oppose it, *see* Opposition (ECF No. 35) at 1. For the reasons below, Pratt's motion is granted.

I. Background

The United States brings this action against the Defendants under the Fair Housing Act, 42 U.S.C. §§ 3601-3619. *See* Amended Complaint (ECF No. 9) ¶ 1. Wheeler is the sole officer and shareholder of Landscape Center of Maine. *See id.* ¶ 6. The United States alleges that the Defendants own several residential rental properties and that Wheeler, since at least 2010 and continuing through 2023, had on repeated occasions "subjected multiple female tenants of [those properties] to discrimination on the basis of sex, including severe or pervasive and unwelcome

1

sexual harassment." *Id.* ¶¶ 8-12.

Pratt occupied one of the Defendants' properties as a residential tenant from about December 2019 through September 2021. *See* Complaint in Intervention (ECF No. 28-1) ¶¶ 9-10. Pratt alleges that Wheeler began harassing her shortly after she moved into the subject property, and that he brought forceable entry and detainer actions against her after she rebuffed his sexual advances. *See id.* ¶¶ 13-36. On April 25, 2022, Pratt filed a complaint against the Defendants with the Maine Human Rights Commission and the United States Department of Housing and Urban Development (HUD). *See id.* ¶¶ 39-41. On April 24, 2024, HUD told Pratt that her case had been transferred to the United States Department of Justice (USDOJ) because on November 16, 2023, the agency had filed the present action against the Defendants involving similar allegations. *See id.* ¶¶ 46-48; Complaint (ECF No. 1) at 9. Pratt filed the instant motion to intervene on September 19, 2024, *see* Motion at 5, along with a complaint in intervention asserting six claims: (1) violations of the Fair Housing Act, (2) negligence, (3) assault, (4) intentional infliction of emotional distress, (5) breach of the covenant of quiet use and enjoyment, and (6) violations of the Maine Unfair Trade Practices Act, *see* Complaint in Intervention ¶¶ 54-84.

## II. Discussion

A request to intervene must be timely regardless of whether intervention is sought as a matter of right or as a matter of discretion. *See* 7C Mary Kay Kane, et al., *Federal Practice and Procedure* § 1916, Westlaw (database updated June 2024). There are "four factors that inform the timeliness inquiry: (i) the length of time that

the putative intervenor knew or should have known that [her] interests were at risk before [she] moved to intervene; (ii) the prejudice to existing parties should intervention be allowed; (iii) the prejudice to the putative intervenor should intervention be denied; and (iv) any special circumstances militating for or against intervention." *R&G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1, 7 (1st Cir. 2009). This "inquiry is inherently fact-sensitive and depends on the totality of the circumstances." *Id.*

The Defendants offer a rather spare opposition, arguing only that Pratt's motion is untimely because it was filed after the deadline to amend pleadings or add parties to the suit, there is no justification for her five-month filing delay because she has known about the case since its inception, and allowing her to intervene now would prejudice their ability to complete discovery by the December 9, 2024, deadline given the individual state law claims she seeks to introduce. *See* Opposition at 1.

There is no question that Pratt could have moved to intervene sooner or that she could bring her claims against the Defendants in a separate action. But Pratt was not sitting idly by; indeed, she pursued an administrative remedy for about two years before she learned, in late April 2024, that the USDOJ had taken over her case. Moreover, in assessing the timeliness of Pratt's motion to intervene, the "most important consideration . . . is whether the delay in moving for intervention will prejudice existing parties to the case." *Federal Practice and Procedure* § 1916. I conclude that the Defendants will not be unduly prejudiced by Pratt's intervention.

3

This case is still in the relatively early stages of litigation,[1] and any additional discovery will likely be fairly limited because Pratt's claims arise from the same nucleus of operative facts as those asserted by the United States. *See* Reply at 2-3; *cf. Thurston v. Progressive Cas. Ins. Co.*, No. 1:22-cv-00375-NT, 2024 WL 3236896, at *2 (D. Me. June 28, 2024) (granting permissive intervention—even though fact discovery had closed and the existing parties had fully briefed a motion for class certification—because it would "not require a total restart of fact discovery but rather a brief reopening to investigate [the proposed intervenors'] individual claims").

I now turn to the merits of Pratt's motion to intervene. Rule 24(a)(1) of the Federal Rules of Civil Procedure requires courts to allow anyone to intervene who is given an "unconditional right" to do so by federal statute, while Rule 24(b)(1)(B) gives courts the discretion to allow anyone to intervene who "has a claim or defense that shares with the main action a common question of fact or law."[2]

Pratt rightly contends, and the Defendants do not challenge, that she is entitled to intervene as of right pursuant to the Fair Housing Act. *See* 42 U.S.C. § 3614(e) (providing that, "any person may intervene in a civil action commenced by the Attorney General under subsection (a) or (b) [of section 3614] which involves an alleged discriminatory housing practice with respect to which such

---

[1] Notably, I extended the remaining pretrial deadlines at the Defendants' request, *see* ECF No. 41, to allow them time to complete the "significant number of depositions of alleged aggrieved persons and other witnesses" yet to be scheduled and "any remaining discovery related thereto," ECF No. 37 at 2.

[2] Motions to intervene typically argue both intervention as of right and permissive intervention. Thus, although Pratt's motion concerns only the former, I will sua sponte raise the issue of permissive intervention and analyze it along with intervention as of right. *See Linkous v. Am. Alt. Ins. Corp.*, No. 7:11–cv–278, 2011 WL 4894233, at *1 n.1 (W.D. Va. Oct. 13, 2011).

person is an aggrieved person"); *id.* § 3602(i)(1) (defining an "aggrieved person" as anyone who "claims to have been injured by a discriminatory housing practice").

What neither party grapples with, however, is that section 3614(e) does not authorize Pratt to intervene for the purpose of asserting her individual state law claims—the statute only confers an "unconditional right" to intervene with respect to the existing Fair Housing Act claim presented by the United States. *See United States v. Haw. Student Suites, Inc.*, No. 19-00528 JMS-RT, 2020 WL 4464377, at *2 (D. Haw. Mar. 20, 2020) (rec. dec.) (concluding that "section 3614(e) do[es] not provide an unconditional right to intervene for any purpose, such as, to add new state law claims"), *aff'd*, 2020 WL 1970706 (D. Haw. Apr. 24, 2020).

Nonetheless, I conclude that Pratt may permissively intervene to assert her individual claims because they share questions of fact in common with the existing Fair Housing Act claims. Indeed, the question of whether Wheeler engaged in the unlawful conduct alleged in Pratt's complaint is central to resolving both her individual claims and the Fair Housing Act claims asserted by the United States. Pratt's intervention is therefore the most efficient means of adjudicating all of the parties' interests. *See Nat'l Right to Life Pol. Action Comm. State Fund v. Devine*, No. 96-359-P-H, 1997 WL 33163631, at *2 (D. Me. Mar. 19, 1997) (observing that "Rule 24 is designed to foster economy of judicial administration" (cleaned up)).

### III.  Conclusion

For the aforementioned reasons, Pratt's motion to intervene is **GRANTED**.

## *NOTICE*

*In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the District Court and to any further appeal of this order.*

Dated: December 16, 2024          /s/ Karen Frink Wolf
                                  United States Magistrate Judge