UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>  Plaintiff,  )<br>          )<br>and  )<br>          )<br>TAYLOR PRATT,  )<br>  Plaintiff/Intervenor,  )<br>          )<br>v.  )<br>          )<br>FRED L. WHEELER, II &  )<br>LANDSCAPE CENTER OF MAINE,  )<br>INC.,  )<br>  Defendant(s)  ) | CIVIL NO. 1:23-CV-00424-NT |

**COMPLAINT IN INTERVENTION**

NATURE OF THE ACTION

1. This complaint in intervention is brought by Plaintiff/Intervenor Taylor Pratt to redress Fair Housing Act violations that injured Taylor Pratt when Defendants discriminated against based on her sex and retaliated against her, along with violations of state law and common law. This action is brought as a matter of right under the Fair Housing Act. The United States Department of Justice filed a lawsuit in this Court on November 16, 2023, alleging similar violations of law on behalf of Taylor Pratt.

JURISDICTION AND VENUE

2. Jurisdiction in this action is predicated on 42 U.S.C. §§ 3613, 3614(e) and by 28 U.S.C. §§ 1331, 1343(a)(4) and 2201.

3. Venue is proper in this district under 28 U.S.C. § 1391(b) because the actions and omissions giving rise to the United States' allegations occurred in the District of Maine and Defendants reside or do business in the District of Maine.

1

## THE PARTIES

4. Plaintiff Taylor Pratt is an individual who resides in Lewiston, Maine.

5. Defendant Fred L. Wheeler, II is a resident of Manchester, Maine.

6. Defendant Landscape Center of Maine, Inc. f/k/a Fred Wheeler Landscaping & Nursery, Inc. ("Landscape Center of Maine") is a Maine corporation.

## FACTUAL BACKGROUND

7. Defendant Wheeler is the sole officer and shareholder of Landscape Center of Maine. Defendant Wheeler:

    a. exercises complete ownership of and control over Landscape Center of Maine;

    b. oversees Landscape Center of Maine's operations;

    c. holds hiring and payment authority over any employees of Landscape Center of Maine;

    d. is responsible for the contracts of Landscape Center of Maine; and

    e. dictates where, when, and how the work of Landscape Center of Maine proceeds and is performed.

8. Defendant Wheeler is further responsible for the control and/or management of Landscape Center of Maine's funds and finances.

9. From approximately February 18, 2015, through approximately October 21, 2022, Defendant Landscape Center of Maine owned a residential real estate property located at 131-135 Ash Street in Lewiston, Maine (the "Subject Property") that contained approximately six rental units. The Deed is recorded at the Androscoggin County Registry of Deeds in Book 9087 at Page 347.

2

10. The Subject Property was occupied as a residence by Taylor Pratt from approximately December 2019 through approximately September 2021.

11. The Subject Property is a "dwelling" within the meaning of 42 U.S.C. § 3602(b) because it is a building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families.

12. At all times relevant to this action, Defendant Wheeler acted on behalf of Landscape Center of Maine, and controlled and managed the Subject Property, including but not limited to, by accepting or rejecting prospective tenants, setting rates for rent and security deposits, signing rental agreements, collecting rent, accepting requests for repairs, making repairs, sending eviction notices, and appearing in housing court in cases related to the Subject Property.

EVENTS LEADING TO THIS COMPLAINT

13. Shortly after Taylor Pratt moved into the Subject Property, Defendant Wheeler began sending her text messages and making comments about her physical appearance. Most of the communication was in person as Taylor Pratt was entering or leaving the Subject Property.

14. Defendant Wheeler told Pratt: "Oh, you look really nice today," "you look like you're having a bad day," "you look really nice, why don't you have a boyfriend?" or words to that effect. These comments made Pratt feel uncomfortable, as she did not wish to have any conversation with Defendant Wheeler other than conversations related to her tenancy.

15. During the summer of 2020 when Taylor Pratt was ill and walking to a local convenience store, Defendant Wheeler drove up next to her in his vehicle and offered her a ride. Taylor Pratt refused, but Defendant Wheeler would not leave until she agreed to get in the vehicle and accept a ride. After he drove to the convenience store, Defendant Wheeler insisted

3

on purchasing the items Taylor Pratt needed. Pratt wanted to walk home, but Defendant Wheeler would not let her. Defendant Wheeler insisted that he give Taylor Pratt a ride. Defendant Wheeler's insistence made Pratt feel uncomfortable.

16. During the warmer months, Defendant Wheeler was at the Subject Property almost daily. Defendant Wheeler frequently made comments to Taylor Pratt about her physical appearance and her clothing.

17. Defendant Wheeler sometimes sent text messages to Taylor Pratt about her appearance.

18. Taylor Pratt asked Defendant Wheeler to stop making comments about her appearance. He did not change his conduct.

19. Due to Defendant Wheeler's unwanted attention, Taylor Pratt avoided Wheeler and sometimes did not want to leave her apartment at the Subject Property. If she saw Defendant Wheeler's car, she would stay inside. Taylor Pratt did not want any contact with Defendant Wheeler and felt unsafe because of Defendant Wheeler. She believed Wheeler was stalking her.

20. On several occasions, Defendant Wheeler blocked Pratt's car in the parking area so that she could not leave. Defendant Wheeler told her that she could not leave until she talked to him.

21. Defendant Wheeler asked about Taylor Pratt's male guests, including if they were her boyfriends. Defendant Wheeler knocked on Taylor Pratt's door if he saw an unfamiliar car in the driveway to ask who was there. Defendant Wheeler stopped Taylor Pratt's friends coming in, asking them questions.

22. On many occasions during the first summer that Taylor Pratt lived at the Subject Property with a female roommate, Defendant Wheeler poked his head into Taylor Pratt's

apartment without her permission or her consent.

23. In or around September 2020, Taylor Pratt's female roommate moved out and a male roommate moved in.

24. Though Defendant Wheeler changed his conduct toward Pratt slightly after the male roommate moved in, Defendant Wheeler still made almost daily comments to Taylor Pratt about her appearance.

25. Taylor Pratt's bedroom window overlooked the porch. Defendant Wheeler sometimes looked inside Pratt's bedroom from the porch. As a result, Taylor Pratt left the blinds to her bedroom closed so Defendant Wheeler could not see into it.

26. In the Spring and/or Summer of 2021, Taylor Pratt sat smoking on her porch. Defendant Wheeler asked Taylor Pratt to pay rent early because he was "broke" or words to that effect. Pratt said she would see what she could do. Defendant Wheeler asked her to "shotgun" him (which she believed was to inhale smoke and then exhale the smoke into his mouth, essentially kissing him).[1] Pratt refused.

27. While Taylor Pratt lived at the Subject Property, Defendant Wheeler gave her gift cards to a local market. Taylor Pratt gave them back to Wheeler because it made her uncomfortable, especially when she learned that Defendant Wheeler did not give gifts to the other tenants.

28. In or around the Summer of 2021, Defendant Wheeler called Taylor Pratt and asked her to go to a beach house in Old Orchard Beach. Defendant Wheeler told her that he had a beach house for the week and asked if she wanted to visit. She declined.

---

[1] *See* "shotgun". *urbandictionary.com*. https://www.urbandictionary.com/define.php?term=shotgun (17 September 2024).

29. Between July and September 2021, the restaurant where Taylor Pratt worked closed because it flooded. Taylor Pratt's employer paid her base salary, but not enough to cover her expenses. As a result, Pratt fell behind on the rent.

30. After Pratt fell behind on the rent, Defendant Wheeler asked Pratt if she would go to the basement and take a couple of "backshots" and he would take money off her rent.[2] Taylor Pratt believed Defendant Wheeler asked her to have anal sex in exchange for rent. Taylor Pratt refused.

31. Taylor Pratt felt uncomfortable at the Subject Property and wanted to move because of Defendant Wheeler's behavior.

32. Defendant Wheeler interfered with Taylor Pratt's privacy in her own home.

33. Shortly after Pratt refused Defendant Wheeler's request for "backshots," Defendants served Taylor Pratt with a notice to quit to terminate the tenancy pursuant to 14 M.R.S. § 6002.

34. Defendants then commenced forcible entry and detainer actions pursuant to 14 M.R.S. § 6001 against Taylor Pratt to evict her from her apartment. Defendants brought two forcible entry and detainer actions against Taylor Pratt on or about August 2021 and September 2021.

35. Taylor Pratt did not welcome Defendant Wheeler's sexual advances and took steps to avoid Defendant Wheeler.

36. The above-described actions and conduct of Defendant Wheeler caused Taylor Pratt to suffer fear, anxiety, and emotional distress, and inhibited her ability to secure and maintain housing for herself. Taylor Pratt took steps to avoid Defendant Wheeler such as

---

[2] *See* "backshot". *urbandictionary.com*. https://www.urbandictionary.com/define.php?term=backshot (17 September 2024).

6

keeping her blinds shut, keeping her apartment door closed, not going outside when Defendant Wheeler was present, and other steps so that she would not have to see or interact with Defendant Wheeler.

37. Defendants owned and/or managed the Subject Property when the harassment occurred.

38. Defendant Wheeler's discriminatory conduct described above occurred while he exercised his authority as an agent for Landscape Center of Maine. Landscape Center of Maine is vicariously or directly liable for Defendant Wheeler's conduct.

ADMINISTRATIVE PROCEEDINGS BELOW

39. On or about April 25, 2022, Taylor Pratt filed a complaint with the Maine Human Rights Commission ("MHRC") against Defendants Fred L. Wheeler, II and Landscape Center of Maine, Inc. The MHRC notified Defendants about the MHRC Complaint.

40. In that Complaint Taylor Pratt indicated that she wanted the case dual-filed with the United States Department of Housing and Urban Development ("HUD").

41. As requested, the MHRC took steps to dual file the case with HUD as indicated by Taylor Pratt's complaint.

42. The MHRC has a work-sharing agreement with HUD based on the substantial equivalency of federal and state law. When complaints filed with the MHRC have joint jurisdiction under state and federal law, and at the direction of the filing party, the MHRC requests dual filing with HUD. HUD assesses the cases for jurisdiction when they are referred for dual filing.

43. Under the work-sharing agreement, HUD retains the discretion to remove the case from the MHRC to do its own investigation. This process is called "reactivation."

7

44. On or about May 5, 2022, the United States Department of Urban Housing and Development ("HUD") reactivated Taylor Pratt's case that she filed with the MHRC. Once HUD reactivated the case, HUD drafted its own complaint and Taylor Pratt signed the HUD Complaint on or about June 1, 2022.

45. HUD began its administrative investigation, including notifying Defendants about the HUD Complaint, giving Defendants a chance to answer, interviewing the parties, and engaging in conciliation efforts.

46. While HUD's administrative investigation was still pending, the United States Department of Justice filed the instant proceeding on or about November 16, 2023.

47. HUD's administrative investigation was still ongoing at the time.

48. On or about April 24, 2024, HUD informed Taylor Pratt's counsel that the case was transferred to the United States Department of Justice because the agency had already filed a pattern and practice case against Defendants involving similar allegations.

49. HUD did not make any administrative findings or issue an official notice related to the transfer.

TOLLING
(42 U.S.C. § 3613 (a)(1)(B))

50. Taylor Pratt timely filed a complaint with the Maine Human Rights Commission on April 25, 2022. In that complaint, Taylor Pratt alleged that Defendants engaged in unlawful discrimination against her based on her sex, engaged in harassment and retaliation against her, invaded her privacy and the privacy of her tenancy, and illegally evicted her in retaliation for the exercise of her federally protected rights.

51. The statute of limitations to file a claim under the Fair Housing Act is two years. 42 U.S.C. § 3613 (a)(1)(A). The statute of limitations for Plaintiff-Intervenor Taylor Pratt's

8

claim under the Fair Housing Act was tolled by statute between April 25, 2022, when she filed her complaint with HUD, and April 24, 2024, when HUD informed Taylor Pratt's counsel that it transferred its investigation to the United States Department of Justice because of the pending litigation. 42 U.S.C. § 3613 (a)(1)(B).

52. Claims Two through Six, set forth below, are based on the same set of facts alleged in Plaintiff-Intervenors' HUD complaint, and are therefore subject to the doctrine of equitable tolling.

53. Taylor Pratt acted reasonably and good faith in timely filing an administrative complaint with HUD and awaiting the issuance of a charge or decision on HUD's investigation, and Defendants received timely notice in the administrative complaint of the claims below.

VIOLATIONS OF LAW

A. FIRST CLAIM

**[Fair Housing Act]**

54. Taylor Pratt realleges and incorporates by reference each paragraph previously alleged in this complaint.

55. Defendants injured Taylor Pratt by committing discriminatory housing practices in violation of the federal Fair Housing Act, 42 U.S.C. §§ 3601, *et seq*. By the actions and statements described above, Defendants have:

    a. Made dwellings unavailable because of sex, in violation of 42 U.S.C. § 3604(a);

    b. Discriminated in the terms, conditions, or privileges of the rental or sale of dwellings, or in the provision of services or facilities in connection therewith, because of sex, in violation of 42 U.S.C. § 3604(b);

    c.    Made statements with respect to the sale or rental of dwellings that indicate a preference, a limitation, or discrimination based on sex, in violation 42 U.S.C. § 3604(c); and

    d.    Coerced, intimidated, threatened, or interfered with Taylor Pratt in the exercise or enjoyment of, or on account of their having exercised or enjoyed, her rights granted or protected by Sections 804 and 805 of the Fair Housing Act, in violation of 42 U.S.C. § 3617.

56.    Taylor Pratt has been injured by Defendants' discriminatory conduct. Taylor Pratt is an "aggrieved person" as defined in 42 U.S.C. § 3602(i) and has suffered damages because of Defendants' conduct.

57.    Defendants' conduct included both *quid pro quo* sex-based discrimination and subjected Taylor Pratt to a hostile housing environment based on her sex. 24 CFR § 100.600 (a)(1) and (2).

    a.    Defendant Wheeler engaged in quid pro quo harassment when he propositioned Taylor Pratt to take money off her rent for sexual favors. *See* paragraph 31.

    b.    Defendant Wheeler' behavior created a sex-based hostile housing environment. *See* paragraphs 13—23, 25-29, and 31-32.

58.    Defendants' conduct was intentional, willful, and taken in reckless disregard of the rights of others.

### B. SECOND CLAIM

**[Negligence]**

59.    Taylor Pratt realleges and incorporates by reference each paragraph previously

10

alleged in this complaint.

60. Defendants owed Taylor Pratt a duty to operate the rental premises free from unlawful discrimination and to hire, train, supervise, and discipline their employees and train themselves to fulfill that duty. Defendants negligently violated that duty by discriminating against Taylor Pratt because of her sex. Defendants' violation of that duty was the result of negligence, including but not limited to:

    a. Defendants' negligent failure to train their agents, employees, representatives, and themselves regarding the requirements of federal and state fair housing laws;

    b. Defendants' negligent failure to hire persons who were familiar with the requirements of federal fair housing laws; and

    c. Defendants' negligent failure to supervise their agents, employees, and representatives regarding compliance with the requirements of federal and state fair housing laws.

61. As a legal result of Defendants' negligent conduct, Taylor Pratt suffered the loss of an important housing opportunity, violation of her civil rights, humiliation, and physical and emotional distress.

## C. THIRD CLAIM

### [Assault]

62. Taylor Pratt realleges and incorporates by reference each paragraph previously alleged in this complaint.

63. An actor is subject to liability to another for assault if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an

11

imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension.

64. Defendant Wheeler acted to cause imminent apprehension of contact when, including but not limited to, he asked Taylor Pratt to "shotgun" him as described in paragraph 27 above; when Wheeler peered through her bedroom window; and asked for sex in exchange for rent. *See* paragraphs 13-23, 25-29, and 31-32. Taylor Pratt kept her shades closed, feared being seen by Wheeler, and feared talking to him.

65. By the actions and statements described above, Defendants injured Taylor Pratt by Defendant Wheeler when he intentionally engaged in behavior to cause apprehension of assault.

D. FOURTH CLAIM

[Intentional Infliction of Emotional Distress]

66. Taylor Pratt realleges and incorporates by reference each paragraph previously alleged in this complaint.

67. Defendants intentionally or recklessly inflicted severe emotional distress upon Taylor Pratt through the conduct alleged above, including making sexual advances, making comments about her physical appearance, asking for sex, and invading her privacy described in paragraphs 13-23, 25-29, and 31-32.

68. Defendants' conduct as alleged above was certain or substantially certain to result in severe emotional distress upon Plaintiff.

69. The conduct of Defendants as alleged above was intentionally or recklessly done, was outrageous and extreme in that it exceeded all possible bounds of decency and is conduct that a reasonable person would regard as atrocious and utterly intolerable in a civilized community.

70. As a result of Defendants' conduct as described above, Plaintiff suffered emotional distress so severe that no reasonable person could be expected to endure it.

71. Defendants' intentional infliction of emotional distress was a direct and foreseeable cause of Plaintiff's damages, as alleged above.

## E. FIFTH CLAIM

### [Breach of the Covenant of Quiet Use and Enjoyment]

72. Taylor Pratt realleges and incorporates by reference each paragraph previously alleged in this complaint.

73. Defendants owed a duty of care to Taylor Pratt pursuant to common law not to interfere with Taylor Pratt's quiet enjoyment of the premises.

74. Defendants violated Taylor Pratt's right to quiet enjoyment of the Subject Property by Wheeler's actions in sustained and substantial interference with her use and enjoyment of the dwelling unit. By engaging in the unlawful conduct alleged herein, Defendants have breached the implied covenant of quiet enjoyment. That unlawful conduct included Defendant Wheeler's repeated unwanted comments to Taylor Pratt about her appearance (sex), attempts to enter the Subject Property, harassment, stalking, and sexual advances that interfered with Taylor's use and enjoyment of her dwelling.

75. By the actions and statements described above, Defendants injured Taylor Pratt by invading her private right of occupancy and infringing upon her right to the quiet and private use, enjoyment, and possession of her dwelling in violation of common law not to interfere with Taylor Pratt's quiet enjoyment of the premises.

## F. SIXTH CLAIM

### [Unfair Trade Practices Act]

76. Taylor Pratt realleges and incorporates by reference each paragraph previously alleged in this complaint.

77. The Maine Unfair Trade Practices Act ("UTPA"), 5 M.R.S. § 207 declares that any "unfair method of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful."

78. The federal Fair Housing Act makes it unlawful for any owner to discriminate against any individual because of sex "in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of . . . sex." 42 U.S.C. § 3604.

79. The federal Fair Housing Act makes it unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 803, 804, 805, or 806 of this title." 42 U.S.C. § 3617.

80. Defendant Wheeler actions and behavior violated the FHA when he engaged in a harassment, including *quid pro quo* requests for sexual favors. After Taylor Pratt denied Defendant Wheeler's sexual advances, he began eviction proceedings against her.

81. Defendant Wheeler's repeated unwanted comments to Taylor Pratt about her appearance (sex), attempts to enter the Subject Property, harassment, stalking, and sexual advances interfered with Taylor's use and enjoyment of her dwelling.

82. Unlawful discrimination by a housing provider against a tenant because of the

tenant's sex is unfair practice of trade or commerce as defined by 5 M.R.S. § 207. Defendant Wheeler's actions, and the resulting emotional distress to Taylor Pratt, caused Taylor Pratt to lose her quiet enjoyment of her apartment at the Subject Property, in which she had a property interest.

83. Defendant Wheeler's discriminatory actions in the business of his rental of housing violated the Maine UTPA, 5 M.R.S. § 207. Even if Wheeler's actions do not constitute a violation of the federal Fair Housing Act, his actions are an unfair trade practice within the meaning of Maine's UTPA.

84. Taylor Pratt is entitled to damages resulting from Defendant Wheeler's actions, including reimbursement for rents paid.

PRAYER FOR RELIEF

WHEREFORE, Taylor Pratt joins in the requested relief asked for by the United States of America and in addition prays that the Court enter an Order that:

a. Declares that Defendants' discriminatory practices violate the Fair Housing Act, 42 U.S.C. §§ 3601, *et seq.*;

b. Enjoins Defendants, their heirs, agents, employees, and successors, and all other persons in active concert or participation with them from:

   i. Discriminating based on sex, including engaging in sexual harassment, in any aspect of the rental or sale of a dwelling;

   ii. Interfering with or threatening to take any action against any person engaged in the exercise or enjoyment of rights granted or protected by the Fair Housing Act;

   iii. Failing or refusing to take such affirmative steps as may be necessary to

        restore, as nearly as practicable, Taylor Pratt of Defendants' past unlawful practices to the position she would have been in but for the discriminatory conduct; and

    iv. Failing or refusing to take such affirmative steps as may be necessary to prevent the recurrence of any discriminatory conduct in the future and to eliminate, as nearly as practicable, the effects of Defendants' unlawful practices.

c. Awards actual damages, including but not limited to emotional damages, and punitive damages to Taylor Pratt for Defendants' discriminatory conduct, pursuant to 42 U.S.C. § 3613(c)(1);

d. Awards all actual damages to Taylor Pratt for Defendants' conduct including Unfair Trade , negligence, assault, and breach of covenant of use of quiet enjoyment;

e. Awards punitive damages for Defendants' ;

f. Awards emotional damages for Defendants' violations of the Fair Housing Act, their negligence, and their intentional infliction of emotional distress;

g. Awards Taylor Pratt attorneys' fees and costs in this action pursuant to 42 U.S.C. § 3613; and the Maine UPTA; and

h. Awards such other relief as the Court may deem appropriate.

Dated: September 19, 2024                    Respectfully Submitted,

*Alice A. Neal*
_____
Alice A. Neal (ME Bar No. 004161)
Attorney for Taylor Pratt
Pine Tree Legal Assistance, Inc.
P.O. Box 2429
Augusta, ME 04338
(207) 552-3121 (phone)
(207) 623-7774 (fax)
aneal@ptla.org

17